IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 11-00316 JMS |
|---|---|---|
| | ) | |
| Plaintiff, | ) | ORDER DENYING |
| | ) | DEFENDANT'S MOTION TO |
| vs. | ) | WITHDRAW GUILTY PLEA |
| | ) | |
| JOSE SOTO-MADRIGAL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

### I. INTRODUCTION

Defendant Jose Soto-Madrigal ("defendant") entered a guilty plea to Illegal Reentry of a Deported Alien on April 19, 2011. He now seeks, prior to sentencing, to withdraw from that guilty plea, claiming that his counsel failed to inform him of a potentially meritorious motion to suppress. On September 13 and 15, 2011, the court received testimony from defendant and his former counsel, Assistant Federal Public Defender Salina Althof ("Althof"). After considering this testimony, reviewing the supporting and opposing memoranda, and considering the arguments of counsel, the court DENIES defendant's motion to withdraw from his guilty plea.

## II. BACKGROUND

Agents of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") arrested defendant at his residence located in Kailua-Kona, Hawaii on February 24, 2011. On March 18, 2011, a criminal complaint was filed against defendant, charging him with Illegal Reentry of a Deported Alien. Althof was then appointed to represent defendant.[1]

Defendant was indicted by a federal grand jury in a single-count indictment for the same offense on March 31, 2011, and he entered a plea of guilty to that offense on April 19, 2011. During the change of plea proceeding, defendant was sworn to answer all questions truthfully, stated that his mind was clear, that he had sufficient time to discuss his case and decision to plead guilty with Althof, and that he was satisfied with Althof's representation of him.

On July 18, 2011, Althof filed a Motion to Withdraw as Attorney, stating that defendant "indicated he did not want to go forward with sentencing and would like to pursue a suppression motion." Doc. No. 27, Althof Decl. ¶ 7.[2]

---

[1] Assistant Federal Public Defender Pamela Byrne represented defendant during his March 18, 2011 initial appearance; Althof filed a Notice of Appearance with the court on March 21, 2011. Doc. Nos. 3, 5.

[2] Defendant first expressed his desire to seek suppression after the draft presentence report was circulated. As Althof credibly testified, defendant was upset that the draft report calculated his criminal history category higher than anticipated. Doc. No. 36 at 12-15.

After obtaining new counsel, defendant then filed a motion to withdraw from his guilty plea on August 4, 2011. In that motion, defendant claims that he informed Althof of the facts of his arrest and his concerns regarding the legality of his arrest, but that Althof responded "that is how the police operate" and that she "didn't appear to pay close attention" to his concerns regarding a potentially illegal arrest. Doc. No. 28, Park Decl. ¶¶ 6-7. Defendant further claims that after he entered his plea, Althof obtained a letter setting forth details regarding ICE's entry to defendant's home,[3] and only then did she relate to him that "there were possible search and seizure issues at the time of his arrest." *Id*. at ¶ 10.

On September 13, 2011, defendant testified in support of his motion to suppress. After outlining the nature of his February 24, 2011 arrest, defendant explained that while in custody he spoke with an immigration attorney[4] about his arrest, learning that it was potentially illegal. He further testified that although he attempted to speak to Althof about his arrest prior to April 19, 2011, "it didn't seem to matter to her. She didn't seem to think it was important" and "she didn't

---

[3] This letter was apparently written by defendant's sister-in-law, based on events described by the sister-in-law's daughter, a witness to at least some of the events on February 24, 2011.

[4] Although unclear to the court if defendant spoke with an attorney specializing in immigration law, as explained below it is clear that while detained defendant spoke to an attorney with the American Civil Liberties Union ("ACLU").

pay much attention to it." 9/13/11 Tr.[5] at 15-16.  He nonetheless entered the plea of guilty.  According to defendant, after April 19, 2011, Althof obtained a copy of the sister-in-law's letter, recognized that she had provided him with insufficient advice concerning a motion to suppress, and advised him to obtain another attorney.  *Id.*

Althof's September 15, 2011 testimony provided a fuller -- and in the court's view, a more credible -- explanation of events.  Althof testified that she first met defendant at Honolulu's Federal Detention Center (FDC) on March 28, 2011.  At that time, defendant expressed his desire to enter a plea of guilty.   Apparently also on that date, defendant told Althof that he had met with an ACLU attorney.  Althof then spoke with the ACLU attorney, including his understanding of the circumstances surrounding defendant's arrest.  Doc. No. 36 at 4-6.

On April 11, 2011, after having obtained discovery and spoken with the ACLU attorney, Althof met with defendant with an interpreter at the FDC.  Prior to this meeting, Althof reviewed a potential motion to dismiss, examining two issues: 1) whether defendant could potentially "prevail" on a motion to suppress (*i.e.*, to obtain a ruling that the search was unlawful); and 2) even if the search was unlawful, whether there was any meaningful remedy.  *Id*. at 9.

---

[5] Transcript of Motion to Withdraw Guilty Plea hearing, September 13, 2011.

During the April 11 meeting, defendant explained the circumstances of his arrest, expressing that "he was upset about how the ICE agents had treated him." *Id*. at 7. Althof credibly testified that after this conversation she discussed with defendant the potential legal issues involved in a motion to suppress, and explained to him that

> [i]t was my legal opinion that we did not have a viable motion to suppress. It was my understanding that there was really nothing to suppress; that the remedy, even if there was an illegal entry, would not have disposed of the criminal case. And I explained to him how that worked.
>
> We did also have a discussion about what a suppression actually entails; that it would probably be his testimony versus an agent's and the inherent problems with that. In my experience, agents are typically believed over defendants by judges. So we had a frank discussion about that.

*Id*. at 7-8.

On cross-examination, Althof explained that although she believed that the ICE agents may have made an illegal entry into the home, "I thought the remedy would not be what he wanted, in essence, which was for the criminal case to disappear." *Id*. at 18. Thus, she advised defendant that although there may be facts to support a motion to suppress, there was no evidence to suppress as the result of any illegal arrest. *Id*. at 19-21.

Finally, in response to the court's questions, Althof explained that

5

during this meeting she explained to defendant that he could make the ultimate decision on whether to file a motion to suppress, and that "while we could, it seemed pointless to me." *Id*. at 23. After understanding Althof's advice, defendant stated that he still wished to enter a plea of guilty. *Id*. at 24.

Althof met with defendant two more times prior to his entry of a guilty plea. During these meetings, defendant expressed no reservation about pleading guilty. *Id*. at 11-12.

### III. LEGAL FRAMEWORK

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw from a plea of guilty before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Although the burden is on the defendant to demonstrate a fair and just reason to withdraw from the plea, this standard is to be applied liberally. *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005). The defendant need not show that the plea itself was invalid in order to prevail. *Id*. at 806.

"Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered

6

his plea." *See United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004).[6]

But a mere change of heart about the decision to plead guilty is not a fair and just reason. *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir. 1987); *United States v. Maxwell*, 498 F.3d 799, 802 n.3 (8th Cir. 2007); *United States v. Washington,* 480 F.3d 309, 316-17 (5th Cir. 2007).

Defendant need not show that a motion to suppress would have been successful. Instead, "[w]hen the basis for withdrawal is erroneous or inadequate legal advice, the defendant's burden is simply to show that proper advice 'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty had he known about the [grounds for withdrawal] prior to pleading.'" *United States v. Mayweather*, 634 F.3d 498, 504 (9th Cir. 2010) (quoting *United States v. Garcia*, 401 F.3d 1008, 1011-12 (9th Cir. 2005)).

## IV. ANALYSIS

Based on two recent Ninth Circuit cases, the parties agree that defendant's motion turns on whether, at the time he entered his plea of guilty, he was aware of the possibility of challenging the lawfulness of his arrest. The court concludes that he was.

---

[6] The failure to assert a claim of factual innocence is not held against a defendant seeking to withdraw a plea under Federal Rule of Criminal Procedure 11(d)(2)(B). *United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005).

*United States v. McTiernan*, 546 F.3d 1160 (9th Cir. 2008), and

*United States v. Mayweather*, 634 F.3d 498 (9th Cir. 2010), discuss pre-sentencing

motions to withdraw a guilty plea based on the claimed failure of counsel to

provide advice regarding a potential motion to suppress evidence. In *McTiernan*,

the defendant claimed that he was never made aware by his counsel of a potential

motion to suppress evidence prior to his plea of guilty. Based on a declaration

filed by McTiernan's previous counsel, the district court denied the motion to

withdraw the guilty plea without receiving evidence. The Ninth Circuit reversed,

stating that the counsel's declaration "lacks the clarity and precision that would

enable us to conclude that McTiernan was properly and adequately advised." *Id*. at

1168. The court thus remanded for an evidentiary hearing.

Two years later, *Mayweather* reached the opposite result.

*Mayweather* recognized that although its facts were strikingly similar to

*McTiernan*,[7]

> [t]here is a fundamental and dispositive difference between
> *McTiernan* and this case; namely, whether, prior to pleading,
> the defendant was aware of the prospect of making
> asuppression motion. In *McTiernan*, there was a legitimate

---

[7] For example, in both cases: 1) defense counsel stated during the change of plea proceeding that he advised his client regarding suppression issues; 2) the district court accepted the factual statements in defense counsels' declarations in opposition to the motion to withdraw without hearing any evidence; and 3) the assertions contained in these declarations were not "beyond reproach." *United States v. Mayweather,* 634 F.3d 498, 505-06 (9th Cir. 2010).

8

> factual issue as to whether the defendant was advised of the potential suppression issue "at any time prior to his plea." 546 F.3d at 1167. Since the issue of the defendant's knowledge could not be resolved on the basis of his attorney's controverted post-plea affidavit, remand for an evidentiary hearing was required to resolve whether there may have been a fair and just reason to withdraw the plea.
>
> Here, by contrast, Mayweather supplied the requisite pre-plea knowledge in his post-plea affidavit by stating that he had "made it very clear to Mr. Barnwell that [he] wanted to litigate his case, *including a motion to suppress the January 14, 2008 search of [his] apartment*." (Emphasis added.) Thus, unlike McTiernan, Mayweather's plea did not result from his lack of knowledge about the suppression issue.

*Id*. at 506. The court explained that although Rule 11(d)(2)(B)'s fair and just reason may be met for any reason "that did not exist when the defendant entered his plea," the Ninth Circuit has "never held that the rule also embraces circumstances known to a defendant at the time of the guilty plea[.]" *Id*. at 506.

The court now turns to the "dispositive difference" between *McTiernan* and *Mayweather* -- whether, prior to pleading, defendant was aware of the prospect of making a suppression motion. Althof's credible testimony clearly established that he was.

Based on Althof's credible testimony, the court finds the following: Prior to meeting with defendant on April 11, Althof obtained discovery and spoke with the ACLU attorney. On April 11, she reviewed the discovery with defendant

9

and obtained defendant's explanation of the events leading up to his arrest. After having an understanding of the events, Althof discussed the possible issues involving a motion to suppress, and advised defendant that although there may be facts to support a motion to suppress, there was no evidence to suppress as a result of any illegal arrest.[8] Further, Althof explained that defendant could make the ultimate decision on whether a motion to suppress should be filed, but he elected to enter a plea of guilty.

With these factual findings, this case closely tracks *Mayweather*, not *McTiernan*. That is, *Mayweather's* "dispositive difference" -- that defendant was aware of the prospect of making a suppression motion -- applies equally here. And knowing of these rights, defendant cannot show a fair and just reason "that did not exist when defendant entered his plea." Instead, it appears that this is a simple case of a change of heart (perhaps as a result of the higher than anticipated criminal

---

[8] There is certainly a long line of Ninth Circuit opinions confirming Althof's view that prevailing on a motion to suppress (*i.e.*, finding his arrest was unlawful) would not ultimately impact the criminal case against defendant. *See, e.g., United States v. Orozco-Rico*, 589 F.2d 433 (9th Cir. 1978) (applying the identity rule that no sanction applies if an illegal arrest leads to the discovery of a individual's identity and then to an INS file); *United States. v. Guzman-Bruno*, 27 F.3d 420 (9th Cir. 1994) (citing *Orozco-Rico*, neither defendant's identity nor records of previous convictions could be suppressed); *United States v. Del Toro Gudino*, 376 F.3d 997 (9th Cir. 2004) (holding that an "egregious violation" exception does not apply to the identity rule); and *United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005) (holding that where defendant was arrested illegally on suspicion of drug trafficking, fingerprint exemplars taken for investigative purposes were properly suppressed, but new exemplars could be taken and the government may rely on defendant's identity, criminal history, and immigration record in bringing immigration charges against him).

history calculation in the draft presentence report).

Defendant reads Althof's testimony in a very restrictive manner in an effort to fall under *McTiernan*. Specifically, he relies almost exclusively on Althof's testimony that "it was my legal opinion that we did not have a viable motion to suppress." From this, he concludes that she believed that there was no viable motion at all (as opposed to a viable motion but no meaningful remedy available), and thus defendant "had no actual knowledge of a viable suppression issue." Doc. 38 at 2. But, as stated above, the court easily concludes otherwise based on Althof's testimony. In essence, after learning relevant facts, Althof advised defendant that although there may be grounds for filing a motion to suppress, there would be no satisfactory remedy. She made defendant aware of the possible motion to suppress, and correctly concluded that there could be no meaningful remedy. And to the extent that defendant himself testified that Althof was not interested in discussing the suppression issue prior to the plea date, the court rejects this testimony. On this critical point, Althof was credible; defendant was not.

## V. CONCLUSION

For the reasons stated above, defendant's motion to withdraw from his plea of guilty is DENIED.

Parties are to contact the court's Courtroom Manager to schedule a new sentencing date.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 17, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Soto-Madrigal*, Cr. No. 11-00316 JMS; Order Denying Defendant's Motion to Withdraw Guilty Plea